AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

Sonny J. Leomiti and Patricia M. Leomiti, husband and wife,

*Plaintiff(s)*

v.

Beteiligungs-Kommanditgesellschaft MS "Buxvillage" Verwaltungs-und Bereederungs GmbH & Co, et al

*Defendant(s)*

Civil Action No. 2:24-cv-01583-BJR

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Beteiligungs-Kommanditgesellschaft MS "Buxvillage" Verwaltungs-und Bereederungs GmbH & Co.
Harburger Straße 47-51
D-21614 Buxtehude
Germany

A lawsuit has been filed against you.

Within 60 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Paul J. Delay, Attorney
THOMPSON & DELAY
2955 80th Ave SE, Suite 202
Mercer Island, WA 98040-2975
USA

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 02/26/2025

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:24-cv-01583-BJR

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Sonny J. Leomiti and Patricia M. Leomiti, husband and wife,<br>　　　　　　　　Plaintiffs,<br>v.<br>Beteiligungs-Kommanditgesellschaft MS "Buxvillage" Verwaltungs-und Bereederungs GmbH & Co, a German company, and MSC Mediterranean Shipping Company S.A., a Swiss company and MSC Monterey her appurtenances, equipment and furniture, *in rem.*<br>　　　　　　　　Defendants. | No. 2:24-cv-01583-BJR<br><br>SECOND AMENDED COMPLAINT<br><br>MARITIME INJURY AND JURY DEMAND<br><br>33 U.S.C. § 905(b) |

On February 24, 2025 by stipulation of the parties and order of the court, the Plaintiff was permitted to amend and file this Second Amended Complaint. (Docket Nos. 25 and 26). COMES NOW the Plaintiffs, by and through their attorneys, and files this Second Amended Complaint with the court's permission and allege as follows:

I. IDENTIFICATION OF PARTIES

1.1　　Plaintiff Sonny J. Leomiti ("Plaintiff") is a resident of the Western District of Washington and is married to Patricia M. Leomiti ("Plaintiffs").

1.2　　On January 31, 2022, Plaintiff was a registered longshoreman with the International

SECOND AMENDED COMPLAINT
PAGE 1

Longshore and Warehouse Union in Seattle and was engaged in maritime employment on navigable waters. Plaintiff was assigned to work on the MSC Monterey and was injured.

1.3   MSC Monterey is a cargo vessel that transports containers, dry and refrigerated and her length is 275 meters, her width and beam is 33 meters, her gross tonnage is 50963 and was built in 2007. Plaintiff's injuries occurred on board the MSC Monterey at Terminal 5 in the Port of Seattle, in the State of Washington. At all times material hereto, the MSC Monterey was a vessel on navigable waters. The MSC Monterey is within this District or will be while this action is pending.

1.4   Beteiligungs-Kommanditgesellschaft MS "Buxvillage" Verwaltungs-und Bereederungs GmbH & Co. is a German corporation, with a principal location at Harburger Straße 47-51, D-21614 Buxtehude, Germany and is the registered owner of the MSC Monterey, under identification number 5160130 ("Buxvillage") and was conducting business in Seattle, Washington.

1.5   MSC Mediterranean Shipping Company S.A. is a Swiss company with a principal place of business at 12- 14 Chemin Rieu, CH-1208 Geneva, Switzerland and time chartered the MSC Monterey. MSC Mediterranean Shipping Company, S.A. is a global shipping company and an ocean common carrier conducting business in Seattle, Washington ("MSC").

1.6   MSC, charterers and Buxvillage, owners of the vessel, entered into a time charter agreement for the use and hire of the MSC Monterey. At the time of the Plaintiff's injury, the time charter agreement described and set forth specific duties and obligations for the operation and control of the MSC Monterey. The time charter agreement in question, is the New York Produce Exchange form and was entered into by the parties on October 26, 2006.

1.7   MSC exercised control and contributed in part to the operations of the MSC Monterey. The time charter agreement stated in Clause #8, the master/captain are under the orders and directions of MSC. Clause #8 further provided that MSC was to load, stow, discharge, lash and unlash the cargo

SECOND AMENDED COMPLAINT
PAGE 2

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

at their expense and under the supervision and responsibility of the captain. Clause #22 allowed MSC to have use of any gear and lashing, securing material, tarpaulins and dunnage on board the vessel. Clause #31 specifically provided, the master shall supervise the stowage of the cargo thoroughly and let one of his officers control all loading, handling, stowage, lashing and discharge of the cargo. Clause #41 required the master to keep a record of all MSC's gear, equipment and/or stores supplied to the vessel and to maintain the same in good order and condition.

1.8   Buxvillage exercised control and contributed in part to the operations of the MSC Monterey. The time charter agreement stated in Clause #26 that "nothing herein… is to be construed as a demise of the vessel to MSC. Buxvillage to remain responsible for the navigation of the vessel, insurance, crew and all other matters … ."

1.9   At all times material hereto, MSC and Buxvillage are referred to collectively as "Defendant Vessel Owners". The Defendant Vessel Owners are liable for all acts and omissions of the crew, employees, agents and third parties under their control. The Defendant Vessel Owners are jointly and severally liable for all damages sustained by the Plaintiffs.

2.0   Plaintiff reserves the right to amend his Complaint should discovery show new or additional vessel owners, agents, charterers and/or lessees of the MSC Monterey.

## II.   JURISDICTION AND VENUE

2.1   This claim of injury arises under the Longshoreman and Harbor Worker's Compensation Act (L.H.W.C.A), 33 U.S.C. § 905(b) *et seq*. Plaintiff was a longshoreman working on the MSC Monterey and this vessel was located on navigable waters in the Western District of Washington. Defendant Vessel Owners are foreign companies doing business in the Western District of Washington. Plaintiff resides and was injured in the Western District of Washington.

2.2   This court has jurisdiction under 28 U.S.C. § 1331.

SECOND AMENDED COMPLAINT
PAGE 3

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

2.3     This court also has jurisdiction because Plaintiff's damages exceed $75,000 and diversity of citizenship under 28 U.S.C. § 1332.

2.4     Pursuant to 28 U.S.C. § 1402(b), venue properly lies with this court, because the negligent acts/or omissions and injuries alleged in this complaint occurred in, and the Defendant Vessel Owners conducted business in this judicial district.

2.5     Personal jurisdiction and service of process are authorized under RCW 4.28.080(13) because the Defendant Vessel Owners are foreign companies, who solicited cargo for transportation to and from the port of Seattle, in the State of Washington.

## III.    FACTUAL BACKGROUND

3.1     On January 31, 2022, Plaintiff was employed as a longshoreman by SSA Marine, Inc. to work on board the MSC Monterey in a capacity comprising "maritime employment" within the meaning of 33 U.S.C. §§902, 903 and 905.

3.2     On January 31, 2022, Defendant Vessel Owners owned, chartered and operated the MSC Monterey, and maintained, equipped, controlled, crewed, and supervised the discharge and loading of containers, while the vessel was moored at Terminal 5 in Seattle, Washington. MSC Monterey was considered a vessel on navigable waters.

3.3     Defendant Vessel Owners had control, oversight and knowledge of the equipment on board the MSC Monterey. Defendant Vessel Owners supplied all twist locks that were used on the MSC Monterey. A twist lock device is designed and fitted to attach to the corners of each container. This device locks down each container allowing the containers to be held in place, stacked one upon the other.

3.4     On January 31, 2022 the cargo on the MSC Monterey was being discharged during the night shift at Terminal 5. The crane operator attempted to lift a container in Bay 22 with the crane on the ship. The container did not lift completely because the front twist lock did not release or unlock. The

SECOND AMENDED COMPLAINT
PAGE 4

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

twist lock stayed connected to the top of the container below. Plaintiff received a radio call from the crane operator requesting assistance to separate the locked containers. It was not apparent to Plaintiff the twist lock was defective. The twist lock in question was locked, covered by the corners of the container and located at least 20 feet above deck.

3.5   Plaintiff attempted to manually unlock the twist lock using an unlocking pole. The twist lock did not function properly because it was damaged and defective. Plaintiff was hit in the face and head by the twist lock when it free fell 20 feet without warning. Plaintiff was knocked unconscious for approximately 10 minutes and found unresponsive by vessel personnel.

3.6   The twist lock in question was supplied by the Defendant Vessel Owners and is a semi-automatic MacGregor brand, CV-20 Dual Pole Design Container Securing Device. This unit weighs 11.5 pounds and contains a manufacturing stamp "1979".

3.7   The twist lock in question posed a hazard and risk of harm to the Plaintiff because it was damaged and defective: (1) the unlocking mechanism was sticking and did not release; (2) heavy rusting with significant corrosion due to salt water, indicating the device and internal components, were exposed to the elements and had not been disassembled and lubricated for an extended period of time; (3) the iron tabs were bent; (4) the housing encasement was off centered; and (5) deformation of the wire ropes as well as damage to the plastic sheathing indicating the device had seen heavy use and needed maintenance, repairs and/or replacement.

3.8   Defendant Vessel Owners had a duty to supply twists locks that operated safely, and this included a duty to:

- store and protect the twist locks from the saltwater and weather;
- maintain the twist locks, by greasing and lubricating regularly;
- train the crew to inspect and identify damaged and defective twist locks;
- train the crew to remove and replace damaged and defective twist locks.

SECOND AMENDED COMPLAINT
PAGE 5

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

## IV.   CAUSE OF ACTION –NEGLIGENCE

4.1   The above allegations are incorporated herein.

4.2   This cause of action is brought pursuant to 33 U.S.C. § 905(b). Longshoremen may bring an action against the vessel owner under 33 U.S.C. § 905(b), for an injury caused by the negligence of a vessel owner. Longshore workers and stevedores have the same meaning under 33 U.S.C. § 905(b).

4.3   Under § 905(b), a vessel owner owes the following duties to a longshoreman: (1) A turnover duty that relates to the condition of the vessel before the longshore workers start the stevedoring operations and this is divided into two types of duties: (i) a duty to exercise reasonable care to turn over to the stevedore a reasonably safe ship and its appurtenances; and (ii) a duty to warn of risks of which the shipowner is or should be aware. (2) Where the vessel owner itself supplies the equipment, they have a duty to inspect the equipment before turning it over for use to the stevedore.

(a)   The "turnover duty to warn" requires the vessel owner to warn the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known, this includes the obligation to inspect for, or discover, the hazard's existence.

(b)   The "turnover duty of safe condition" requires the vessel owner to turn over the ship and its equipment in such a condition that an experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons or property.

(c)   The "active operations or control duty" requires the vessel owner to exercise reasonable care to avoid exposing the longshoremen to harm from hazards that are caused by the active control of the vessel owner during the stevedoring operation.

(d)   The "duty to intervene" requires the shipowner to intervene and protect longshoremen after cargo operations have commenced if the vessel owner becomes aware that the ship or its gear pose a danger to the longshoremen or that the stevedore is acting unreasonably in failing to protect longshoremen against danger.

4.4   Defendant Vessel Owners breached all the above duties in Section 4.3 owed to the

SECOND AMENDED COMPLAINT
PAGE 6

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

Plaintiff, including but not limited to:

    (a)    The ship and its equipment were not turned over in a safe condition, so that an experienced stevedore would be able to safely carry on its cargo operations.

    (b)    Failure to keep the twist locks safely stored to avoid extended exposure to saltwater, corrosion and rust build up.

    (c)    Failure to maintain, inspect and remove the damaged and defective twist lock before the stevedore began unloading and loading.

    (d)    Failure to warn the stevedore the twist lock was defective and damaged, because the twist lock was not unlocking and releasing.

    (e)    The stevedore was exposed to a dangerous work condition, that was caused or created by the Defendant Vessel Owners, who were in sole control of repairing, replacing and removing all damaged and defective twist locks.

    (f)    Failure to intervene in the operations of the stevedore after creating a known or foreseeable unsafe work area.

    (g)    Failure to provide a safe work area.

    (h)    Failure to remove defective and damaged twist locks from service until repairs or replacement is completed.

    (i)    By waiting to remedy the dangerous work condition, until after the injury occurred.

    (j)    Failure to properly train the crew to protect the devices from the elements, to maintain, inspect, and replace damaged and defective twist locks.

    (k)    Failure to employ a competent crew, to store, maintain, inspect, and replace damaged or defective twist locks.

4.5    As a direct and proximate cause of Defendant Vessel Owners negligence, Plaintiff has sustained permanent injuries.

4.6    As a direct and proximate cause of Defendant Vessel Owners' negligence, Plaintiff has suffered, and will in the future experience pain and suffering, in an amount that will be proved at the

SECOND AMENDED COMPLAINT
PAGE 7

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

time of trial.

4.7   As a further direct and proximate cause of Defendant Vessel Owners' negligence, Plaintiff has incurred reasonable and necessary expenses for medical treatment and sustained an income loss.

4.8   As a further direct and proximate cause of Defendant Vessel Owners negligence, Patricia M. Leomiti has a claim for loss of spousal consortium due to the injuries suffered by her husband, Sonny J. Leomiti.

4.9   Defendant Vessel Owners acts and omissions demonstrated a callous disregard, for Plaintiff's safety, and he is entitled to punitive damages available under §905(b).

## V.   NEGLIGENCE PER SE

5.1   The above allegations are incorporated herein.

5.2   The International Maritime Organization (IMO) is a universal governing body and promulgates standards to regulate the shipping industry and cargo transportation worldwide. The IMO promulgates safety regulations and standards that apply to all international vessel owners and to the MSC Monterey and its equipment. Violations of the IMO regulations and standards are evidence of negligence.

5.3   To establish Negligence Per Se, the following five elements must exist: 1) violation of a regulation; 2) the Plaintiff's membership in a class of intended beneficiaries of the regulation; 3) injury of a type which the regulations were designed to protect 4) the unexcused nature of the violation, and 5) causation of the injury.

   a.   IMO adopted the *International Convention for the Safety of Life at Sea, 1974 (SOLAS) and the Code of Safe Practice for Cargo Stowage and Securing* and this was amended and updated on December 7, 2020 (collectively *SOLAS*).

   b.   *SOLAS* mandates the vessel owner maintain a Cargo Securing Manual, documenting the portable securing devices including the container stacking fittings and cargo securing devices,

SECOND AMENDED COMPLAINT
PAGE 8

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

setting forth the name of the manufacturer; type of item, strength test and maximum securing load. *SOLAS* further mandates regular inspection and maintenance of the cargo securing devices including routine visual inspections and examination/re-testing.

5.4    *SOLAS* standards were a regulation designed to protect longshoremen and other crew members who are working with container stacking fittings and cargo securing devices. The Plaintiff was a member of the class of intended beneficiaries the regulation was designed to protect. The Defendant Vessel Owners provided a twist lock that was defective and failed to open safely. The Plaintiff was injured as a direct and proximate cause of the Defendant Vessel Owners violation of the safety regulations. A violation(s) of the *SOLAS* regulation is evidence of the Defendant Vessel Owners negligence.

## VI.    PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

6.1.    That the Court find and enter judgment against the Defendant Vessel Owners jointly and severally liable for causing Plaintiffs' injuries and damages.

6.2.    That the Court find and enter judgment against the MSC Monterey, her gear, appurtenances, equipment and furniture *in rem*. That all claiming an interest in the vessel be cited to appear and answer the matters aforesaid and that MSC Monterey be sold to pay for the Plaintiffs' damages herein.

6.3.    For pre-judgment interest as well as an award of costs and attorney's fees incurred in connection with this action.

6.4.    For punitive damages in amount to be proven at the time of trial.

6.5.    For provision to amend his claims to conform to the proof at trial or discovery.

6.6.    For such other and further relief as the Court may find just and equitable.

SECOND AMENDED COMPLAINT
PAGE 9

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demands a jury as to all issues.

DATED this 25th day of February 2025.

THOMPSON & DELAY, P.S.

_/s/ Paul J. Delay_
Paul J. Delay
WSBA No. 16482
Attorney for Plaintiffs

SECOND AMENDED COMPLAINT
PAGE 10

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965

| | |
|---|---|
| STATE OF WASHINGTON | ) |
| | ) ss. |
| COUNTY OF KING | ) |

SONNY LEOMITI AND PATRICIA LEOMITI, husband and wife, being duly sworn, deposes and says that on this day personally appeared before me Mr. and Mrs. Leomiti, to me known to be the individuals described in and who executed the within and foregoing instrument, and acknowledged that they signed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and seal of office this 25th day of February 2025.

_____
SONNY J. LEOMITI

_____
PATRICIA LEOMITI

_____
NOTARY PUBLIC in and for the State
of Washington, residing at: Mercer Island
My Commission Expires: 11/30/2027

SECOND AMENDED COMPLAINT
PAGE 11

THOMPSON & DELAY
ATTORNEYS AT LAW
2955 80TH AVE. SE, SUITE 202
MERCER ISLAND, WA 98040-2975
TEL: 206/622-0670/ FAX 206-622-3965